### COMMONWEALTH *vs.* JOHN HUTCHISON.

Upon the trial of an indictment for procuring A.'s signature to a partnership agreement by false pretences, with intent to defraud, it appeared that the defendant with intent to defraud made false representations to A. as to his, the defendant's, pecuniary responsibility, in order to induce A. to advance him money for a pretended joint purchase of hay ; that A. trusting in the representations agreed to advance the money, but requested the defendant first to execute with him the partnership agreement; that this agreement was thereupon jointly executed and retained by A. *Held,* that from this it was competent for the jury to find that, the execution of the agreement having become necessary for the obtaining of the money, the defendant had adopted its execution as a part of his plan ; and that, as the agreement was complete without delivery, the defendant might be properly convicted.

INDICTMENT under Gen. Sts. *c.* 161, § 54, for obtaining by false pretences a signature to a written instrument the false making of which would be punishable as forgery. The indictment alleged that the defendant March 9, 1873, at Boston, " with intent to cheat and defraud one George Allen, and with the view to obtain and procure the signature of said Allen to the written instrument hereinafter set forth, and to induce said Allen to enter in copartnership with him, said Hutchison, under and according to the provisions of said instrument, did then and there unlawfully, knowingly and designedly, falsely pretend and represent to said Allen, that he, said Hutchison, then and there had and owned two thousand dollars in gold with him, said Hutchison, in said Boston, and that he, said Hutchison, then and there had capital and means and money to the amount of two thousand dollars, and that he, said Hutchison, then and there intended to put said capital, means and money into the business and copartnership named in the written instrument hereinafter set forth." The written instrument was a copartnership agreement between Hutchison and Allen for the purchase of hay, grain and produce in Nova Scotia by Hutchison and their sale in Boston by Allen, they sharing equally in the profits.

At the trial in the Superior Court, before *Dewey*, J., it appeared that the defendant, wishing to obtain money from Allen, with intent to defraud and under color of a joint purchase of hay, made the alleged pretences, knowing them to be false, and

asked Allen to advance the money; that Allen, believing the pretences to be true, was induced by them to accept the defendant's proposal, and agreed to advance the money; that, however before paying it over, and in order, as he said, to have the proceeding conducted in a strictly business-like manner, he requested the defendant to sign articles of copartnership; that he had the instrument in question prepared by his counsel; that it was read to the defendant and to Allen by the counsel; that they both executed it, and that thereupon Allen gave the defendant a check for $525, the sum for which he had asked.

There was nothing to show that the defendant desired to have this or any other paper executed, or that it entered into his plans in any way; but it appeared that the idea of a written contract was Allen's, and that the defendant assented to it to obtain the money without trouble. The instrument was never delivered to the defendant, but was kept in Allen's possession, and was produced by him at the trial, and the defendant had never attempted to make any use of it.

The defendant having been found guilty by the jury, the presiding judge, deeming the propriety of the conviction so doubtful as a question of law as to require the decision of this court, reported the case, at the defendant's request.

*R. D. Smith & H. W. Chaplin,* for the defendant.

*C. R. Train,* Attorney General, *& W. G. Colburn,* Assistant Attorney General, for the Commonwealth.

MORTON, J. The Gen. Sts. *c.* 161, § 54, provide, that whoever designedly, by a false pretence and with intent to defraud, obtains the signature of any other person to a written instrument, the false making whereof would be punishable as forgery, shall be punished by imprisonment or fine. The defendant was convicted under this statute, of obtaining the signature of one Allen to an agreement of copartnership set out in the indictment. There is no doubt that the false making of this agreement would be punishable as forgery. *Commonwealth* v. *Ray,* 3 Gray, 441.

The only question is whether, upon the evidence in the case, it was competent for the jury to find that the defendant obtained

Allen's signature to the articles of copartnership designedly, by false pretences and with intent to defraud. It appeared at the trial, that the defendant, wishing to obtain a certain sum of money from Allen, with the intent to defraud, made the alleged pretences, knowing them to be false, and that Allen was induced by them to agree to enter into copartnership with him and to advance him the money. The false pretences alleged were that the defendant had and owned two thousand dollars in gold, and that he intended to put said capital and money into the business and copartnership named in' said articles. Before paying the money, Allen, in order, as he said, to have the proceeding conducted in a business-like manner, requested the defendant to sign articles of copartnership, which were prepared and executed by both parties, and thereupon Allen paid over the money to the defendant, the agreement remaining in Allen's possession. There was nothing to show that the defendant desired to have this or any other paper executed, or that it entered into his plans in any way, but he assented to it to obtain the money without trouble. All the evidence is not reported, but we see nothing in the facts stated to show that it was not competent for the jury to find a verdict of guilty. It may be true that the defendant made the false representations with the primary purpose merely of defrauding Allen of his money, and that it did not form a part of his original plan to enter into written articles of copartnership. But the jury may well have found that for the successful prosecution of this purpose it became necessary to procure the execution of such articles, and that when it became necessary, the defendant adopted this step as a part of his plan or design. Although it was merely a step towards the accomplishment of an ulterior purpose, it is still true in fact, that Allen's signature was obtained by the defendant designedly, by false pretences and with intent to defraud. It is not an uncommon case that a person in the prosecution of an unlawful purpose may commit several crimes.

The defendant contends that he did not obtain " the signature of Allen within the meaning of the statute, as the instrument to which it was attached was never delivered to him." This view

may be correct as applied to the signature to a promissory note or other paper which does not take effect or expose the signer to any liability until it is delivered, but it does not apply to an instrument like the one in question. Upon executing this agreement Allen became liable, as to third parties at least, to all the obligations and liabilities of a partner. The instrument took effect and became equally operative whether it was in the possession of Allen or of the defendant. We are of opinion therefore that the defendant obtained the signature within the meaning of the statute, and that upon the whole case no reason is shown for disturbing the verdict of the jury.

*Judgment on the verdict.*